## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESSICA HINTON, TIFFANY GRAY, JANET GUZMAN LINA POSADA, EVA PEPAJ, ROSA ACOSTA, JAMILLETTE GAXIOLA, LUCY PINDER, JESSE GOLDEN, JOHN COULTER, KATARINA VAN DERHAM, KIMBERLY "KIM" COZZENS, and RACHEL MORTENSON, | : : : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C.A. No. |
| CHARLIE'S DREAM, INC., d/b/a PLEASURE GARDEN CLUB and SAVERIO GARAFALO | : : : : : | **COMPLAINT** (Jury Trial Demanded) |
| Defendants. | : | |

Plaintiffs JESSICA HINTON, TIFFANY GRAY, JANET GUZMAN, LINA POSADA, EVA PEPAJ, ROSA ACOSTA, JAMILLETTE GAXIOLA, LUCY PINDER, JESSE GOLDEN, JOHN COULTER, KATARINA VAN DERHAM, KIMBERLY "KIM" COZZENS, and RACHEL MORTENSON (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint ("Complaint") against Defendants CHARLIE'S DREAM, INC., d/b/a PLEASURE GARDEN CLUB and SAVERIO GARAFALO (collectively "Defendants") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their swingers club, PLEASURE GARDEN CLUB located in Philadelphia, Pennsylvania ("Pleasure Garden" or the "Club").

- 1 -

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy as pertains to Defendants' appropriation of their likeness; c) violation of Pennsylvania's statutory right of publicity, 42 Pa. Cons. Stat. § 8316; d) violation of the Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1-201-9.2; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, punitive, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 15 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6.      According to publicly available records, Defendant CHARLIE'S DREAM, INC. is a corporation formed under the laws of the state of Pennsylvania, with its principal place of business located at 61st and Passyunk Avenue, Philadelphia, Pennsylvania 19153-0. CHARLIE'S DREAM, INC.  operates Pleasure Garden, which is located at 6039 Passyunk Ave, Philadelphia, Pennsylvania, 19153.

7.     According to publicly available records, Defendant SAVERIO GARAFALO is an individual operating under the laws of the state of Pennsylvania, who is an Owner and/or CEO of CHARLIE'S DREAM, INC.

8.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania because Philadelphia, Pennsylvania is Defendants' principal place of business.

9.     A significant portion of the alleged causes of action arose and accrued in Philadelphia, Pennsylvania and the center of gravity for a significant portion of all relevant events alleged in this Complaint is predominately located in Philadelphia, Pennsylvania.

## PARTIES

### *Plaintiffs*

10. Plaintiff Jessica Hinton ("Hinton") is a well-known professional model, and a resident Los Angeles County, California.

11. Plaintiff Tiffany Gray a/k/a Tiffany Toth ("Gray") is a well-known professional model, and a resident of Orange County, California.

12. Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident Los Angeles County, California.

13. Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

14. Plaintiff, Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

15. Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

16. Plaintiff Jamillette Gaxiola ("Gaxiola") is a well-known professional model, and a

resident of Clark County, Nevada.

17. Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

18. Plaintiff Jesse Golden ("Golden") is a well-known professional model, and a resident of Los Angeles County, California.

19. Plaintiff John Coulter ("Coulter") is a well-known professional model, and a resident of Los Angeles County, California.

20. Plaintiff Katarina Van Derham ("Van Derham") is a well-known professional model, and a resident of Los Angeles County, California.

21. Plaintiff Kimberly "Kim" Cozzens  ("Cozzens") is a well-known professional model, and a resident of Santa Clara County, California.

22. Plaintiff Rachel Mortenson ("Mortenson") is a well-known professional model, and a resident of Los Angeles County, California.

***Defendants***

23. According to publicly available records, Defendant Charlie's Dream, Inc. is formed under the laws of the state of Pennsylvania.  During times relevant to this action, Charlie's Dream, Inc. operated Pleasure Garden in Philadelphia, Pennsylvania.

24. According to publicly available records, and upon information and belief, Saverio Garafalo, in his capacity as principal, owner and/or CEO of Charlie's Dream, Inc. maintained operational control over Charlie's Dream, Inc. and Pleasure Garden, including all advertising relating thereto.

## FACTUAL ALLEGATIONS

25.  As set forth immediately below, each Plaintiff is a well-known professional model

who earns her livelihood modeling and licensing her Images to companies, magazines, and individuals for the purpose of advertising products and services.

26. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

27. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at, endorsed or were otherwise associated or affiliated with Pleasure Garden.

28. In the case of every Plaintiff, such appearance was false.

29. Moreover, in every case this misappropriation occurred without any Plaintiff's knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

30. Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas (or their licensees') because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand.

***Plaintiffs' Backgrounds and Careers***

31. Hinton was discovered by a talent manager at a wedding at age 14. By age 16 she locked in three national TV commercials and made guest appearances on Baywatch and 7th Heaven. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV

personality roles hosting for Victory Poker, and Top Rank Boxing interviewing the likes of

Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month

becoming one of the most popular Playmates of that year. She was the center piece of an ad

campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises. Hinton also

attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV

Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear

Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA

television station KTLA. Her images have appeared on billboards, magazines, posters, and

multiple forms of electronic media. Hinton has been a featured front cover model gaining

attraction for magazines such as FHM, Kandy, MMA Sports, Guitar World, and Muscle &

Fitness. She was named Creative Director for MAJR Media and was given part ownership for

her role with the company. Hinton has successfully accomplished elite status as a social media

celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X

(formerly known as Twitter). [1]

32. That we know of, Hinton is depicted in the photo in Exhibit "A" to promote Pleasure

Garden's on its Facebook page. This Image was intentionally altered to make it appear that

Hinton was either an employee working at Pleasure Garden's, that she endorsed the Club, or that

she was otherwise associated or affiliated with the Club.

33. Hinton has never been employed at Pleasure Garden's, has never been hired to

endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure

Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

34. Gray is an extremely successful model that takes great pride in holding the prestigious title of a Playboy Playmate. Gray was the Playboy "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under Playboy's Fresh Faces. Moreover, she has not only been featured in such magazines as Super Street Bike, Import Tuner, Sport Truck, Iron Man, Muscle & Fitness, Guitar World, Ripped, Seventeen, Pump, and Maxim, but has also posed for various catalogs. Gray has even appeared on television shows such as Tosh.O and The Daily Habit. She has booked jobs shooting for lingerie companies such as Shirley of Hollywood, Seven Til Midnight, Elegant Moments, and Jvalentine. She is also a real estate agent in Southern California and part owner of Sugar Taco, a plant-based restaurant located in Los Angeles. Gray currently has over 3.7 million Facebook followers, 1.2 million Instagram followers, and over 368.7K X (formerly known as Twitter) followers.

35. That we know of, Gray is depicted in the photo in Exhibit "B" to promote Pleasure Garden's on its Facebook page. This Image was intentionally altered to make it appear that Gray was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

36. Gray has never been employed at Pleasure Garden's, has never been hired to endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37. Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared

on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.

38. That we know of, Guzman is depicted in the photo in Exhibit "C" to promote Pleasure Garden's on its Facebook page. This Image was intentionally altered to make it appear that Guzman was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

39. Guzman has never been employed at Pleasure Garden's, has never been hired to endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40. Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102,000 Instagram followers, 4,000 YouTube subscribers, 17,300 Facebook followers, and over 5,200 Twitter followers.

41. That we know of, Posada is depicted in the photo in Exhibit "D" to promote Pleasure Garden's on its Facebook page. This Image was intentionally altered to make it appear that Posada was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

42. Posada has never been employed at Pleasure Garden's, has never been hired to

endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure

Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

43. Pepaj is a professional model and actress who moved to Hollywood to pursue her

career in 2004. Her work includes high fashion runway modeling, print features, and film roles.

Pepaj has appeared in films such as The Hand Off, Interior, True Detective, Leather Bar and The

Romp, and was a feature model in a national Diet Coke TV commercial campaign. She is also a

content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared

with her husband, has over 2.28 million subscribers.

44. That we know of, Pepaj is depicted in the photo in Exhibit "E" to promote Pleasure

Garden's on its Facebook page. This Image was intentionally altered to make it appear that Pepaj

was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she

was otherwise associated or affiliated with the Club.

45. Pepaj has never been employed at Pleasure Garden's, has never been hired to endorse

Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has

received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and

will continue to suffer, damages as a result of same.

46. Acosta started her classic ballet studies at the age of four at the Centro de la Cultura

in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte),

where she excelled as one of the most gifted students of the academy. After graduating with

honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with

mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest

soloist member in 2002. Partaking in all major classic and modern shows in the Dominican

Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,000 Twitter followers.

47. That we know of, Acosta is depicted in the photo in Exhibit "F" to promote Pleasure Garden's on its Facebook page. This Image was intentionally altered to make it appear that Acosta was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

48. Acosta has never been employed at Pleasure Garden's, has never been hired to endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49. Gaxiola began her career as a teenager. She was spotted by a modeling agent at a fast-food restaurant, and after some initial resistance, the teenage beauty decided to try modeling. She became Miss Cuba at the age of 18, and quickly became popular among fashion designers and magazines. She is active in a number of social and charitable causes, and one of her personal missions has been to help young women deal with self-esteem issues. In a small period of time, she has possessed the work ethic and dedication to transition between Beauty, Fashion, TV, and is now a Sports Personality representing the UFC. She has worked for designer brands such as Reebok, Hurley, Guess Jeans, Victoria Secret, Nike, MAC Cosmetics, Roberto Cavalli, Naeem

Khan, Paul Marciano, Fendi, Saks Fifth Avenue and Niemen Marcus. She is also the current face

of UFC. Her beauty pageants consist of Miss Cuba Grand International, and Miss Cuba

International. Gaxiola's magazine highlights include those of GQ Magazine, Maxim Australia,

Open Magazine, and Esquire. She has 210,000 Instagram followers.

50. That we know of, Gaxiola is depicted in the photo in Exhibit "G" to promote Pleasure

Garden's on its Facebook page. This Image was intentionally altered to make it appear that

Gaxiola was either an employee working at Pleasure Garden's, that she endorsed the Club, or

that she was otherwise associated or affiliated with the Club.

51. Gaxiola has never been employed at Pleasure Garden's, has never been hired to

endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure

Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

52. Pinder is, and at all times relevant to this action was, an English model, actress, host,

businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in

publications such as FHM, Nuts, Loaded, The Daily Star, and hundreds of others. Pinder has

appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She

was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final

edition of the Nuts magazine cover. Pinder has collaborated with major brands such as Unilever

(Lynx) and Camelot (National Lottery) among others, and on large national and international

advertising campaigns. Pinder has an established an acting career with many TV appearances

and Film credits. She has appeared on shows such as I'm Famous and Frightened, Soccer AM,

Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the

USA. Pinder was also a contestant on Celebrity Big Brother. Pinder starred in films such as The

Seventeenth Kind, Age of Kill, and Warrior Savitri. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars years after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and X (formerly known as Twitter).

53. That we know of, Pinder is depicted in the photos in Exhibit "H" to promote Pleasure Garden's on its Facebook page. These Images were intentionally altered to make it appear that Pinder was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

54. Pinder has never been employed at Pleasure Garden's, has never been hired to endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

55. Golden is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Golden shares her secrets on her own blog and also writes for many other magazines and sites. She's currently a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working

for many notable fashion brands, dozens of commercials, television and film; Golden continues to expand her career through life experiences.

56. That we know of, Golden is depicted in the photos in Exhibit "I" to promote Pleasure Garden's on its Facebook page. These Images were intentionally altered to make it appear that Golden was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

57. Golden has never been employed at Pleasure Garden's, has never been hired to endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

58. Coulter was born in Arizona. He spent two years studying illustration on a full art scholarship at the University of Arizona before continuing his studies at the prestigious Art Center College of Design in Pasadena. Coulter also pursued performing arts, which led him to "The Happiest Place on Earth". At Disneyland, he worked both as an artist in the entertainment art department and moonlighted as Prince Charming in the Main Street Electrical Parade before going on to play other Disney characters. One of the highlights was playing Tarzan in the opening cast of Tarzan Rocks. His princely charm also took him to Tokyo Disneyland, where he continued to perform several roles. Coulter's modeling career has lasted over 20 years leading him to New York and Europe where he worked with renowned photographers Ellen Von Unwerth and David Lachapelle. He shot a Jeans Campaign with Cindy Crawford and a MAC Cosmetics campaign with Mary J. Blige and Lil' Kim. He has walked the runways with Naomi Campbell, Kate Moss, Marcus Schenkenberg and Tyson Beckford and has appeared in television commercials with Paris Hilton, Heidi Klum, Kristen Chenoweth, and Karolina Kurkova. Coulter

has been on Tyra Bank's America's Next Top Model, in a Madonna video directed by Guy Ritchie, and can be seen on the Britney Spears' Blackout Album as the controversial priest. He is most recognizable with his clothes off, gracing the packaging and ads for Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male. His fine arts background has manifested itself in many areas such as costuming, photo and fashion styling, as well as hair and makeup.

59. That we know of, Coulter is depicted in the photos in Exhibit "J" to promote Pleasure Garden's on its Facebook page. These Images were intentionally altered to make it appear that Coulter was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

60. Coulter has never been employed at Pleasure Garden's, has never been hired to endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

61. Van Derham is a successful model, actress, philanthropist, and entrepreneur. As a model, Van Derham graced over 60 magazine covers and appeared in over 600 media outlets including the Time Square jumbotron, CNN, FOX, and NBC. She appeared in 17 national and international print and TV commercials and has been voted one of the 100 sexiest women in the world by magazines on 3 different continents. Van Derham made history by being the only St. Pauli Girl spokesmodel who got re-elected. This has not been repeated since. As an actress, she played opposite Bob Saget in the TV show, Entourage and plays one of the lead roles in the upcoming movie, "Unbelievable" alongside Nichelle Nichols, Tim Russ, and Gilbert Gottfried. Currently, Van Derham is working on the movie, "Vendetta Vette". She is also a founder, CEO, and Editor-in-Chief of classic, glamour lifestyle magazine, VIVA GLAM. Her well-respected

status gets her invited as a judge of model contests and beauty pageants around the globe. She

has over 210,000 Instagram followers, over 11,000 Twitter followers, and over 190,000

Facebook followers.

62. That we know of, Van Derham is depicted in the photos in Exhibit "K" to promote

Pleasure Garden's on its Facebook page. These Images were intentionally altered to make it

appear that Van Derham was either an employee working at Pleasure Garden's, that she

endorsed the Club, or that she was otherwise associated or affiliated with the Club.

63. Van Derham has never been employed at Pleasure Garden's, has never been hired to

endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure

Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has

suffered, and will continue to suffer, damages as a result of same.

64. Cozzens is a model and actress who has appeared on an Old Spice national

commercial, as well as a New Amsterdam Vodka national commercial. She has modeled for

campaigns with Guess, Old Spice, Grey Goose, Sephora Cosmetics, Con Air Hair Tools,

Sketcher Shoes, and many more. She has also modeled for Maxim magazine, Sandals Resort,

Dodge, and Pepsi to name a few. Kim in total, has signed with 12 top agencies internationally,

two of them being LA Models and LATALENT.

65. That we know of, Cozzens is depicted in the photos in Exhibit "L" to promote

Pleasure Garden's on its Facebook page. These Images were intentionally altered to make it

appear that Cozzens was either an employee working at Pleasure Garden's, that she endorsed the

Club, or that she was otherwise associated or affiliated with the Club.

66. Cozzens has never been employed at Pleasure Garden's, has never been hired to

endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure

Garden's, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

67. Mortenson signed with a modeling agency since 2009. She signed with Ford models, La Models, Next Models Miami, and an agency in New York. Mortenson is the face of hundreds of campaigns from beauty brands, fashion houses, and swim and lingerie brands. In addition, Mortenson is currently the face of Guess Jeans and has been for nine years running. Mortenson has been the face of Fredrick's of Hollywood for over four years. She was also on two covers of Playboy Magazine in the same year. In addition, Mortenson was featured in magazines such as Vogue, Vanity Fair, Rolling Stones, GQ, and Sports Illustrated. Mortenson has walked and opened for runways shows such as Yeezy, Michael Costello, Guess Jeans, Max Mara, Beach Bunny, Escada, and Marciano.

68. That we know of, Mortenson is depicted in the photos in Exhibit "M" to promote Pleasure Garden's on its Facebook page. These Images were intentionally altered to make it appear that Mortenson was either an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

69. Mortenson has never been employed at Pleasure Garden's, has never been hired to endorse Pleasure Garden's, has never been otherwise associated or affiliated with Pleasure Garden's, has received no remuneration for Defendants' unauthorized

***Defendants' Business***

70. Upon information and belief, both Defendants operated, during the relevant time period, Pleasure Garden's, where they engaged in the business of providing a venue for adults to engage in sexual encounters with other couples. These establishments offered amenities such as lounges, dance floors, and private rooms, creating an environment where such activities could

take place.

71. Upon information and belief, and in furtherance of its promotion their promotion of Pleasure Garden's, Defendants own, operate and control Pleasure Garden's' social media accounts, including its Facebook, and Instagram accounts.

72. Defendants used Pleasure Garden's' Facebook, and Instagram accounts to promote Pleasure Garden's, and to attract patrons thereto.

73. Defendants did this for their own commercial and financial benefit.

74. Defendants have used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an employee working at Pleasure Garden's, that she endorsed the Club, or that she was otherwise associated or affiliated with the Club.

75. Defendants used Plaintiffs' Images and created the false impression that they worked at or endorsed Pleasure Garden's to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

76. As Defendants were at all times aware, at no point have any of the above named Plaintiffs ever been affiliated with or employed by Pleasure Garden's and at no point have any of the Plaintiffs ever endorsed Pleasure Garden's, or otherwise been affiliated or associated with Pleasure Garden's.

77. All of Defendants' activities, including their misappropriation of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and

Defendants did not compensate Plaintiffs for their use of their Images.

78. As such, Plaintiffs have never received any benefit from Defendants' use of their Images.

**_Standard Business Practices in the Modeling Industry_**

79. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

80. The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (e.g., company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

**_Defendants' Misappropriation of Plaintiffs' Images_**

81. As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Pleasure Garden's by and through various marketing and promotional mediums including, without limitation, Pleasure Garden's website, Facebook, and Instagram.

82. Defendants showcased Plaintiffs' Images on Pleasure Garden's social media pages to create the false impression that Plaintiffs worked at Pleasure Garden's, endorsed, promoted or sponsored same, or were otherwise associated or affiliated with same.

83. Defendants did so to attract clientele to Pleasure Garden's, promote Pleasure

Garden's, and thereby generate revenue for Defendants.

84.  Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Pleasure Garden's.

85.  Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

86.  In addition, Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

87.  This is especially so insofar as each of Plaintiffs' Images have been associated with a swingers club, and the implication of Defendants' use of Plaintiffs' Images is that they are employees of, endorse a swingers club, or are otherwise associated or affiliated with a swingers club.

88.  At no point were any of the Plaintiffs ever affiliated with Pleasure Garden's, or Defendants.

89.  Each of Plaintiffs' Images was used without her consent.

90.  At no point was any Plaintiff ever contacted by any Defendants, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

91.  Neither Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

92.  Neither Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Pleasure Garden's website, Facebook, or Instagram accounts.

93.  Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her

Images.

94.  Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

95.  Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

96.  Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendants, and protects Plaintiffs from the conduct described herein.

97.  Defendants used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendants' establishment , or endorsed Defendants' businesses. This was done to promote and attract clientele to Defendants' establishment, and thereby generate revenue for Defendants.

98.  Thus, this was done in furtherance of Defendants' commercial benefit..

99.  Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendants' customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

100.  Both Plaintiffs and Defendants compete in the entertainment industry, use similar

marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

101. As such, an unauthorized use of Plaintiffs' image to promote a establishment created an undeniable confusion in Defendants consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendants used Plaintiffs' image for advertising purposes, that is to promote their business enterprises, as such, Defendants' unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness.

102.  Defendants' use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendants' establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

103.  Despite the fact that Defendants were at all times aware that Plaintiffs neither worked at, nor endorsed their establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendants' establishment.

104. Defendants knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendants' establishment.

105. Upon information and belief, Defendants' use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendants' businesses, and the goods and services provided by Defendants.

106. As a direct and proximate result of Defendants' actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendants, the nature

of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendants.

107. Further, any failure, neglect or default by Defendants will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

108. Due to Defendants' unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial. WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### SECOND CAUSE OF ACTION
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(B): False Advertising)**

109. Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

110. Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendants and protects Plantiffs from the conduct described herein. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

111. Defendants used Plaintiffs' image, likeness and/or identity as described herein

without authority in order to create the perception that Plaintiffs worked at or were otherwise

affiliated with Defendants' establishment, endorsed Defendants' businesses and activities, and/or

consented to or authorized Defendants to use their image in order to advertise, promote, and

market Defendants' businesses, Defendants' establishment, and/or Defendants' establishment

events and activities.

112.   Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote

and market Defendants' businesses, Defendants' establishment, and/or Defendants' events and

activities as described in this Complaint was false and misleading.

113.   Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as

described in this Complaint constitutes false advertising by suggesting or implying, among other

things, that Plaintiffs worked at or were otherwise affiliated with Defendants' establishment,

endorsed Defendants' businesses, Defendants' establishment or Defendants' events or activities,

or consented to or authorized Defendants' usage of her image in order to advertise, promote, and

market Defendants' businesses or Defendants' events and activities and/or that Plaintiffs would

participate in or appear at the specific events promoted in the advertisements.

114.   Defendants' false advertising described above have the capacity or tendency to

confuse consumers, including actual and prospective patrons of Defendants' establishment, as to

the general quality of attendees and participants of Defendants' establishment and in their events,

as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Defendants'

establishment, endorsed Defendants' businesses, Defendants' establishment or Defendants'

establishment events or activities, or consented to or authorized Defendants' usage of their image

in order to advertise, promote, and market Defendants' businesses or Defendants' establishment

events and activities.

115.  Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or was otherwise affiliated with Defendants' establishment, endorsed Defendants' businesses, or Defendants' establishment events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Defendants' establishment events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Defendants' establishment, visit Defendants' establishment, and participate in events at Defendants' establishment and had a material effect and impact on the decision of members and prospective members and participants to join Defendants' establishment, visit Defendants' establishment and take part in the events at Defendants' establishment.

116.  Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Defendants' establishment and their activities and attracting clientele to Defendants' establishment.

117.  Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

118. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

119. Defendants wrongful conduct as described herein was willful.

120. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

121. Defendants had actual or constructive knowledge of the wrongfulness of their

conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

122. The method and manner in which Defendants used the image of Plaintiffs further evinces that Defendants were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their image to advertise Defendants' businesses.

123. Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the establishment lifestyle and activities at Defendants' establishment.

124. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial. WHEREFORE, Plaintiffs respectfully request that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendants' unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

**THIRD CAUSE OF ACTION**
**(Right of Privacy)**

125. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

126. As set forth hereon, Defendants have violated each Plaintiff's common law right to privacy under Pennsylvania law.

127. Defendants have done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

128. Defendants invaded and violated Plaintiffs' privacy and misappropriated their

likeness by publishing their Images on Pleasure Garden's website or related social media accounts as part of Defendants' advertising campaign.

129.  At all relevant times, Pleasure Garden's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

130.  At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' image and likeness on their website or social media account.

131. Defendant's website and social media accounts were designed to attract business to the Defendant and generate revenue for Defendants.

132. Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

133. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republished Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

134. Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

135.  Upon information and belief, Defendants use of Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant.

136.  At no point did any Defendants ever receive permission or consent to use any

Plaintiff's Image on their website or social media account.

137.  Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote the Defendants.

138.  At no point did Defendants ever compensate Plaintiffs for its use of their image and likeness.

139.  No applicable privilege or authorization exists for Defendants' use of Plaintiffs' image and likeness.

### FOURTH CAUSE OF ACTION
**(Common Law Right of Publicity)**

140.  Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

141.  As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona and likeness.

142.  Said commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona and likeness.

143.  As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Pleasure Garden's advertising.

144.  Defendants did so without any Plaintiff's consent, written or otherwise.

145.  Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

146.  Plaintiffs are informed and believe and hereon allege that Defendants' republication

of Plaintiffs' images and likenesses was altered so as to reach a new audience and/or promote a different product.

147. Defendants were at all relevant times aware that they never received any of the Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

148. At no point did Defendants ever compensate Plaintiffs for its use of their image and likeness.

149. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' image and likeness.

**FIFTH CAUSE OF ACTION**
**(Defamation)**

150. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

151. As detailed throughout this Complaint, Defendants have published altered image and likeness of Plaintiffs in order to promote their establishment to the general public and potential clientele.

152. Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by the Club, that they endorsed the Club, or that they had some affiliation with the Club.

153. None of these representations were true.

154. In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were employees working at the Club, or endorsed the Club.

155. Defendants were at least negligent in publishing Plaintiffs' image and likeness

because they knew, or should have known, that Plaintiffs were not employed by the Defendants, had no affiliation with the Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

156. In the alternative, Defendants published the image and likeness of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by the Defendants, had no affiliation with the Defendants, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

157. Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

158. Defendants' publication of Plaintiffs' image and likeness constitutes defamation under Pennsylvania law because said publication falsely accuses Plaintiff of having acted in a manner – i.e., working as an employee of and/or endorsing Defendants' Establishments - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

159. Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Pennsylvania law because said publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

160. This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was an employee of and/or promoting as Defendants, an inference which Defendants' publication of the

image and likeness support.

161. Defendants' publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Pennsylvania law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to her.

162. Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

**SIXTH CAUSE OF ACTION**
**(Negligence and *Respondeat Superior*)**

163. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

164. Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

165. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

166. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

167. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in

their advertising practices.

168. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

169. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Pennsylvania law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

170. Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

171. As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Conversion)

172. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

173. Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

174. By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

175. As a result of Defendants' unlawful conversion of Plaintiffs' Images, and

publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

176. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

177. As set forth in detail above, Defendants published Plaintiffs' Images in order to promote the Clubs to the general public and potential clientele.

178. Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either employees working at the Clubs, or endorsed the Clubs.

179. Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

180. Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' image and likeness.

181. Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Images because said publication has assisted Defendants in attracting clientele to their Clubs.

182. Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is unjust.

183. As such, Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Quantum Meruit)

184. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth hereon.

185. Plaintiffs are each internationally known models who earn their livings appearing in,

inter alia, commercials, advertisements, and publications on behalf of companies and brands.

186. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

187. Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at their Club, endorse their Club, or are otherwise affiliated with their Club, Defendants have not compensated Plaintiffs.

188. Plaintiffs are therefore entitled to reasonable compensation for the Clubs' unauthorized use of their Images.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through ninth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial, pursuant to CUPTA 42-110g(a);

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C. § 1117; and,

(e)  For such other and further relief as the Court may deem just and proper.

/s/ Gerald B. Baldino, III

Gerald B. Baldino, III, Esquire
Attorney I.D. No. 326111
OF COUNSEL:                                          SACCHETTA & BALDINO
John V. Golaszewski, Esquire*                        308 East Second Street
THE CASAS LAW FIRM, PC                               Media, PA 19063
1740 Broadway, 15th Floor                            P: (610) 891-9212
New York, New York                                   F: (610) 891-7190
T: 646-872-3178                                      gbaldino@sbattorney.com
F: 855.220.9626                                      *Attorney for Plaintiffs*
john@talentrights.law

Dated: October 30, 2024

*Pro Hac Vice Application Forthcoming*